**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

**vs.**                                                     **5:09-CR-303  (NAM)**

**ELMER HEFFELMIRE,**

                                        **Defendant.**
_____

**APPEARANCES:**                                    **OF COUNSEL:**

ANDREW T. BAXTER                          Lisa M. Fletcher, Esq.
United States Attorney                        Assistant U.S. Attorney
Northern District of New York
100 South Clinton Street
Syracuse, New York 13261

ALEXANDER BUNIN                          Melissa A. Tuohey, Esq.
Federal Public Defender                       Assistant Federal Public Defender
The Clinton Exchange
4 Clinton Square
Syracuse, New York 13202
*Attorney for Defendant*

**Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM DECISION AND ORDER**

**I.        INTRODUCTION**

        Defendant Elmer Heffelmire is charged in a five-count indictment with violating 18

U.S.C. §§ 2252A(a)(2)(A); 2250(a).  Count five charges defendant, an individual required to

register under the Sex Offender Registration and Notification Act ("SORNA"), with traveling in

interstate commerce and knowingly failing to register or update his registration as required by

law.

Presently before the Court is defendant's motion to dismiss the indictment on the following grounds: (1) SORNA is not applicable to defendant because no state has implemented the law; (2) to punish defendant for a law that did not yet apply to him would violate the *Ex Post Facto* Clause of the United States Constitution; (3) to punish defendant for violating a law with which he was unable to comply would violate the Due Process Clause of the United States Constitution; (4) the criminal provisions of SORNA (18 U.S.C. § 2290) and the registration requirements of SORNA (42 U.S.C. § 16913) violate the Commerce Clause; (5) the registration requirements of SORNA violate the Tenth Amendment; and (6) SORNA violates the non-delegation doctrine.[1] (Dkt. No. 8)  The government opposes defendant's motion and cross moves for discovery. (Dkt. No. 12).

## II.   FACTS[2]

In August 1989, defendant was arrested and charged in Onondaga County with Sodomy in the First Degree, in violation of N.Y. Penal Law § 130.50(3); Sex Abuse in the First Degree, in violation of N.Y. Penal Law § 130.65(3); and Endangering the Welfare of a Child, in violation of N.Y. Penal Law § 260.10(1).  In 1990, defendant was indicted on all three charges and subsequently fled from New York State.  In April 1992, defendant was located in Texas and was re-arrested on the same charges.  Defendant pled guilty to the count one of the indictment, Sodomy in the First Degree, and judgment was entered against him.  On May 29, 1992, defendant was sentenced to 6 years to 12 years incarceration in the New York State Department of

---

[1] Defendant moves to dismiss the indictment but does not address counts one through four which charge defendant with violations of 18 U.S.C. § 2552A(a)(2)(A).  Defendant has presented no argument in support of dismissal of those charges.  Therefore, the Court considers defendant's motion as a motion to dismiss count five of the indictment only.

[2] The facts recited herein, unless otherwise noted, are undisputed.

Corrections.  On September 28, 2000, defendant was sentenced to an additional term of 2 years to 4 years incarceration after being convicted upon a non-jury trial of Attempted Escape in the First Degree.

On March 10, 2008, defendant appeared for a hearing pursuant to N.Y. Correction Law § 168, before Hon. Joseph E. Fahey in Onondaga County.[3]  Judge Fahey found defendant's Sex Offender Registration risk level to be "three" and further classified defendant as a Sexually Violent Offender.

On March 19, 2008, while still incarcerated, defendant registered as a sex offender by completing and filing a New York State Sex Offender Registration Form.  On April 28, 2008, defendant completed a NYS Sex Offender Change of Address Form indicating a change of address within Syracuse, New York.  On June 13, 2008, defendant completed a second NYS Sex Offender Change of Address Form indicating a change of address within Syracuse, New York.[4]

On August 8, 2008, defendant received an Appearance Ticket from the Syracuse Police Department directing him to appear in court on August 27, 2008 to answer charges of Possessing a Sexual Performance by a Child in violation of N.Y. Penal Law § 263.16.[5]  On August 27, 2008, an arrest warrant was issued after defendant failed to appear in court.  On January 17, 2009, defendant was arrested in Beaverdam, Ohio.  According to various witnesses identified in the

---

[3] Within 60 days prior to the release of a sex offender, the Board of Examiners of Sex Offenders shall assess the risk of repeat sex offense and the threat to public safety and shall make a recommendation which is subject to judicial review. *See* N.Y. Correction Law § 168-l.  Pursuant to Correction Law § 168-n, the court shall hold a hearing to establish the duration of registration, the appropriate risk level of notification and whether or not the defendant is qualified as a sexual predator, sexually violent offender or predicate sex felon.  *See People v. Marrero*, 52 A.D.3d 797, 798 (2d Dep't 2008); *see also People v. Aikey*, 836 N.Y.S.2d 487 (N.Y. Co. Ct. 2007).

[4] The street addresses for defendant's "former" and "new" residence are omitted from the copies of the forms in the record.

[5] The record does not contain a copy of the August 2008 arrest report.

arrest report, defendant had been living and working in Ohio since June 2008.  Defendant did not register as a sex offender in Ohio.

On May 14, 2009, defendant was indicted.  Count five of the indictment charges defendant with traveling in interstate commerce and knowingly failing to register and/or update his registration from August 2008 through January 2009.

## III.   LEGISLATIVE BACKGROUND

Title I of The Adam Walsh Child Protection and Safety Act ("Walsh Act") is comprised of the Sex Offender Registration and Notification Act ("SORNA").  Pub. L. No. 109-248, §§ 1-155, 120 Stat. 587, 590-611 (2006), codified at 42 U.S.C. §§ 16901-16991.  SORNA was enacted in July 2006 to "protect the public from sex offenders and offenders against children by establishing a comprehensive national system for the registration of sex offenders".  42 U.S.C. § 16901. SORNA established registry requirements for sex offenders and provides, in pertinent part:

(a) In general

A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b) Initial registration

The sex offender shall initially register--

(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the registration current

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

42 U.S.C. § 16913.

Subsection (d) of 42 U.S.C. § 16913 vested the Attorney General with, "the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section". 42 U.S.C.§ 16913(d). The Attorney General was further directed to develop software to enable jurisdictions to establish and operate uniform sex offender registries. 42 U.S.C. § 16923. Each jurisdiction was directed to implement SORNA before the later of July 27, 2009 or one year after the software was made available. *See* 42 U.S.C. § 16924.

On February 28, 2007, the Attorney General enacted an Interim Rule which applied the requirements of SORNA to, "all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act". 28 C.F.R § 72.3.

SORNA also created criminal penalties for individuals who failed to register. The criminal provisions of SORNA were codified at 18 U.S.C. § 2250 and provide, in pertinent part:

(a) In general. Whoever

(1) is required to register under the Sex Offender Registration and Notification Act;

(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal

5

law, or the law of any territory or possession of the United States; or (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act; shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

## IV.   DISCUSSION[6]

Based upon the above statutory language, the court now examines defendant's arguments for dismissal.

### A.   SORNA's Applicability to Defendant

Defendant argues that SORNA is not applicable because no state has implemented the law. Defendant claims that the Attorney General has not yet issued a regulation declaring that SORNA applies to those convicted before the Act is implemented in a particular state. Defendant further claims that because no state has any systems in place to carry out SORNA's registration and notification requirements, defendant cannot be subject to SORNA's constraints. The government contends that defendant was well aware of his requirement to register.

"SORNA's language makes clear that sex offenders have a general obligation to register in their jurisdiction. There is no mention anywhere in SORNA that the registration obligation does not become effective until the state implements the additional registration requirements of SORNA". *U.S. v. Contreras*, 2008 WL 5272491, at *6 (W.D. Tex. 2008) (internal citations omitted). Compliance with the registration requirements of SORNA is possible in states that have

---

[6] Defendant concedes that the arguments presented herein have previously been rejected by this Court. *See U.S. v. Barner*, 2009 WL 819385 (N.D.N.Y. 2009); *see also U.S. v. O'Dell*, 2009 WL 1347141 (N.D.N.Y. 2009). As the Second Circuit has not yet ruled on these issues, defendant raises these arguments, "to preserve them for appeal".

yet to implement SORNA by registering through the state's sex offender registry.  *See U.S. v. Van Buren*, 2008 WL 3414012, at *6 (N.D.N.Y. 2008) (internal citations omitted).  In accordance with the relevant state statutes, a convicted sex offender could appear at the relevant law enforcement agency and submit the required information to fulfill his duties under SORNA and avoid criminal action.  *See U.S. v. Fuller*, 2008 WL 2437869, at *2 (N.D.N.Y. 2008) (holding that the defendant presented no evidence that he was impeded from appearing at the relevant law enforcement agency to submit the required information to fulfill his duties under SORNA).

Several courts in this district have rejected the same argument that defendant attempts to advance in this regard.  Specifically, courts have held that, "the fact that states have not yet met their SORNA obligations is irrelevant to the obligations of a sex offender to comply with SORNA".  *U.S. v. Romeo*, 2009 WL 140422, at *3 (N.D.N.Y. 2009); *U.S. v. Lamere*, 2008 WL 5244125, at *2 (N.D.N.Y. 2008) (citing *U.S. v. Hester*, 2008 WL 351677, at *2 (N.D.N.Y. 2008)) (holding that whether or not the defendant knew he was in violation of SORNA was irrelevant because New York and Florida had sex offender registries and it was not necessary for the defendant to know precisely which statute he was violating in order to be held liable under the law); *Van Buren*, 2008 WL 3414012, at *6 (holding that whether mandated by New York, North Carolina or SORNA, registration is not optional); *U.S. v. Hall*, 577 F.Supp.2d 610, 614 (N.D.N.Y. 2008) (holding that even though New York and Virginia had not implemented SORNA, the defendant had a duty under federal law to maintain his sex offender registration with the states in which he resided).  Contrary to defendant's arguments, the Attorney General adopted an interim regulation, effective February 28, 2007, which provided that SORNA applies to sex offenders

7

whose conviction predates the enactment of SORNA, regardless of whether a jurisdiction has implemented SORNA's requirements. *Hall*, 577 F.Supp.2d at 615.

Moreover, courts in other circuits have reached similar conclusions. In a recent decision, the Ninth Circuit Court of Appeals cited to a decision from the Eighth and concluded that, "[t]here is no clear direction from Congress instructing that an individual's obligation to register is dependent on a state's implementation of SORNA". *U.S. v. George*, 2009 WL 2591677, at * 2 (9th Cir. 2009) (citing *U.S. v. May*, 535 F.3d 912, 916-19 (8th Cir. 2008)); *see also U.S. v. Hinckley*, 550 F.3d 926, 630 (10th Cir. 2008) (court found reasoning of *May* persuasive and adopted same). The *George* court held that, "without regard to whether SORNA is implemented by Washington or any other state, registration is required" and the defendant violated SORNA when he failed to register as a sex offender after traveling in interstate commerce. *George*, 2009 WL 2591677, at *2.

Both New York and Ohio have sex offender registries. *See U.S.v. Benton*, 2008 WL 5273971, at *1 (S.D.Ohio 2008). Therefore, New York and Ohio have mechanisms under which defendant could have appeared and submitted the required information to fulfill his duties under SORNA. Applying the majority view, the Court finds that the fact that states have yet to update their registries and procedures to conform with SORNA has no bearing on defendant's obligation to register as a sex offender. *See Fuller*, 2008 WL 2437869, at *3. Certainly, defendant was aware of the registration requirements as he completed a Sex Offender Registration Form and two Change of Address Forms. Defendant has not established that he was impeded from registering in New York or Ohio. Therefore, the Court finds that SORNA applies to defendant and he may be subject to criminal penalties under 18 U.S.C. § 2250(a).

**B.**     ***Ex Post Facto* Clause**

Defendant claims that punishing him for a law that was not yet applicable to him violates

the *Ex Post Facto* Clause.  The constitutional protection against *ex post facto* laws prohibits the

punishment of individuals for acts that were legal when performed.  *Hall*, 577 F.Supp.2d at 615

(citing *Collins v. Youngblood*, 497 U.S. 37, 42 (1990)).  To violate the Clause, a law "must be

retrospective, that is, it must apply to events occurring before its enactment" and "must

disadvantage the offender affected by it".  *U.S. v. Lawrance*, 548 F.3d 1329, 1332 (10th Cir. 2008)

(internal citations omitted) (holding that the defendant's *ex post facto* argument failed because the

defendant traveled in interstate commerce after July 2006 and failed to register pursuant to the

requirements of SORNA).

Defendant's argument has been raised several times by other convicted sex offenders in

this district and across the country and has universally been rejected.  The courts in this district

have held that prosecuting a sex offender under § 2250(a) is not retrospective as SORNA does not

punish the individual for previously being convicted of a sex crime.  *See Romeo,* 2009 WL

140422, at *3; *see also Lamere*, 2008 WL 5244125, at *2 (citing *U.S. v May*, 535 F.3d 912, 919-

20 (8th Cir. 2008)); *see Fuller*, 2008 WL 2437869, at *3 (holding that since SORNA applied to

the defendant when he traveled to New York State, it did not have a retroactive effect); *see also*

*Hall*, 577 F.Supp.2d at 615 (holding that the indictment accused the defendant of engaging in

conduct that was already illegal prior to the defendant's actions and therefore, the *ex post facto*

challenge was rejected); *see also Van Buren*, 2008 WL 3414012, at *7.

In this case, the indictment accuses defendant of engaging in illegal conduct, to wit,

traveling in interstate commerce and failing to update his registration, between August 2008 and

January 2009.  This Court adopts the majority view and finds that because defendant is charged with violating § 2250(a) for conduct that occurred after SORNA was enacted, there is no *ex post facto* violation.

**C.     Due Process Clause**

Defendant argues that no apparatus existed through which an offender could comply with SORNA.  Thus, defendant contends that criminalizing defendant for the failure to do something that was impossible to do violates the Due Process Clause.

Due process does not require that a defendant have actual knowledge of a duty to register where the facts demonstrate "proof of probability" that he had knowledge.  *U.S. v. Fuller*, 2008 WL 5600709, at *5 (N.D.N.Y. 2008) (citing *Lambert v. California*, 355 U.S. 225, 229-30 (1957)). Again, district courts within this district have rejected this argument by sex offenders.  *Hall*, 577 F.Supp.2d at 616 (holding that the defendant, "incorrectly contends that compliance with SORNA is impossible because of a state's failure to implement the statute's requirements" - the defendant could have fulfilled his obligation under SORNA by providing the Virginia and New York registries with the required information); *see also Fuller*, 2008 WL 2437869, at *3 (holding that New York's failure to implement SORNA did not impede the defendant from providing state officials with the required information); *see also Fuller*, 2008 WL 5600709, at *5 (holding that it is enough that the defendant had constructive knowledge of an affirmative duty to register).

In this case, the record establishes that defendant completed and filed a NYS Sex Offender Form.  Further, defendant completed a New York State Sex Offender Change of Address Form on two occasions - April 28, 2008 and June 13, 2008.  Defendant's prior experience with the New York statute demonstrates the probability that he had knowledge of his duty to register.

10

Moreover, defendant does not allege that he was impeded from providing the necessary information to officials in New York or Ohio. Consequently, had defendant complied with his registration obligations, he would not have violated SORNA. *See Lamere*, 2008 WL 5244125, at *3. Accordingly, defendant's due process rights were not violated.

**D.    Commerce Clause**

Defendant argues that § 2250 and § 16913 are invalid under the Commerce Clause. Defendant contends that the criminal provision and registration requirements do not fall into any of the broad categories of activity that Congress may regulate under its commerce power. Therefore, as Congress lacked the authority to enact § 2250 and § 16913, the indictment should be dismissed.

Article I of the Constitution vests Congress with the power to regulate commerce with foreign nations, several states and with the Indian tribes. *See* U.S. Const., Art. 1. In *U.S. v. Lopez*, 514 U.S. 549, 558-59 (1995), the Supreme Court articulated three broad categories of activity that Congress may regulate under its commerce power: (1) Congress may regulate the use of channels of interstate commerce; (2) Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; and (3) Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce. Factors used to determine whether or not a regulated activity has a substantial effect on interstate commerce include: (1) whether the statute regulates activity that is economic in nature; (2) whether the statute includes a jurisdictional element; (3) whether there are congressional findings concerning

11

the effect of the regulated activity upon interstate commerce; and (4) the strength of the nexus between the regulated activity and the substantial effect upon interstate commerce. *U.S. v. Morrison*, 529 U.S. 598, 610-12 (2000).

### 1.    18 U.S.C. § 2250

Defendant argues that § 2250 does not fall into any of the three broad categories of activity that Congress may regulate under its commerce power. Defendant's argument lacks merit. Applying *Lopez* to SORNA, courts have held that Congress may regulate "persons or things in interstate commerce, even though the threat may come only from intrastate activities". *Hall*, 577 F.Supp.2d at 619 (citing *Lopez*, 514 U.S. at 558). When a sex offender travels from one state to another, he is an instrumentality of interstate commerce. *U.S. v. Ambert*, 561 F.3d 1202, 1212 (11th Cir. 2009); *see also Contreras*, 2008 WL 5272491, at *4 (holding that § 2250(a) is valid under the Commerce Clause because it regulates persons in interstate commerce).

Courts in this district and around the country have continuously held that § 2250 is constitutional under the Commerce Clause. *Ambert*, 561 F.3d at 1211 (holding that the use of the channels and instrumentalities of interstate commerce is necessarily part of the commission of the targeted offense under § 2250); *May*, 535 F.3d at 922 (holding that SORNA derives its authority from the first and second prongs of *Lopez* ); *Romeo*, 2009 WL 140422, at *4 (citing *May* and holding that SORNA contains a sufficient nexus to interstate commerce ); *Lamere*, 2008 WL 5244125, at *3-4 (citing *May* and holding that a SORNA satisfies the first two prongs of *Lopez*); *Fuller*, 2008 WL 5600709, at *4 (holding that there is a substantial nexus between interstate travel and failure to register); *Van Buren*, 2008 WL 3414012, at *11 (finding that, "75 federal courts have addressed the constitutionality of SORNA, and a majority of these cases, all but two,

12

have addressed Congress' authority to enact the statute under the Commerce Clause"); *Hall*, 577 F.Supp. 2d at 619 (holding that Congress may safeguard against conduct that is wholly intrastate so long as the federal statute extends only to individuals who travel in interstate commerce).

This Court adopts the majority view and finds that §2250(a) is valid under the Commerce Clause as it satisfies the *Lopez* test and contains a sufficient nexus to interstate commerce.

### 2.     42 U.S.C. § 16913

Defendant argues that § 16913 requires every sex offender to register, regardless of whether the offender traveled across state lines.  As such, defendant claims that § 16913 is unconstitutional as Congress does not have the power to impose registration requirements on individual citizens convicted of purely intrastate offenses.

In support of his challenge, defendant has cited to three cases from this district, two of which are presently pending on appeal.  *See U.S. v. Hall*, 577 F.Supp.2d 610 (N.D.N.Y. 2008); *U.S. v. Guzman*, 582 F.Supp.2d 305; *U.S. v. Nasci*, 632 F.Supp.2d 194 (N.D.N.Y. 2009).[7] Defendant also cites to *U.S. v. Waybright*, 561 F.Supp.2d 1154 (D.Mont. 2008), *U.S. v. Powers*, 544 F.Supp.2d 1331 (M.D.Fla. 2008) and *U.S. v. Myers*, 591 F.Supp.2d 1312 (S.D. Fla. 2008). However, reliance upon these holdings is misplaced as the decisions have been overruled or abrogated by the Court of Appeals for the Ninth and Eleventh Circuits.[8]

---

[7] In *Hall*, *Guzman* and *Nasci*, Judge Hurd found § 16913 to be unconstitutional under the Commerce Clause.  The government appealed the decisions in *U.S. v. Hall*, 577 F.Supp.2d 610 (N.D.N.Y. 2008) and *U.S. v. Guzman*, 582 F.Supp.2d 305 (N.D.N.Y. 2008).  On September 14, 2008, the Second Circuit heard oral argument on those cases.  In *Nasci*, the court acknowledged that the defendant presented the same arguments raised in *Hall*. *Nasci*, 632 F.Supp.2d at 194.

[8] On August 25, 2009, the Ninth Circuit issued a decision in the case of *U.S. v. George*, 2009 WL 2591677, at *6, n. 2 (9th Cir. 2009).  In *George*, the Court stated that, "we disapprove of [the *U.S. v. Waybright*] decision". The lower court decision in *Powers* was vacated and remanded by the Eleventh Circuit. *See U.S. v. Powers*, 562 F.3d 1342 (11th Cir. 2009). The district court holding in *Myers* was abrogated by the Eleventh Circuit holding in *Ambert*. *Ambert*, 561 F.3d at 1202.

In *Hall*, the court distinguished the jurisdictional elements of § 2250(a) and § 16913 and noted that § 2250(a) required sex offenders to travel in interstate commerce before being held criminally liable.  *Hall*, 577 F.Supp.2d at 622.  In contrast, the court noted that § 16913 conferred a duty upon all sex offenders, regardless of whether they traveled in interstate commerce, to register or update their sex offender registration within three days of any change of name, residence, employment or student status.  *Id.* at 620.  The court reasoned that the jurisdictional element of § 2250(a) did not remove a sex offender's duty under § 16913 to update his registration.  *Id.*  Applying the *Lopez* test, the court held that § 16913 could not satisfy the first or second prongs of the test, specifically, the court held that § 16913 neither regulated the use of channels of interstate commerce nor the instrumentalities or persons in interstate commerce.  *Hall,* 577 F.Supp.2d at 620.  With regard to the third prong, the court held that: (1) § 16913 did not regulate economic activity; (2) § 16913 did not contain a jurisdictional element; (3) the legislative history of § 16913 was devoid of congressional findings concerning the effect of the sex offender registration upon interstate commerce; and (4) any effect of continually registering sex offenders upon interstate commerce was too attenuated to be consider substantial.  *Id.* at 621.  Thus, the court held that § 16913 was not a valid exercise of the Commerce Clause.

Despite the rulings in *Hall, Guzman* and *Nasci*, the majority of courts in this district have addressed the same argument by convicted sex offenders and have concluded that § 16913 and § 2250(a) are interrelated components of SORNA and must be read together, not in isolation.  *U.S. v. Nier*, 2009 WL 1076203, at *5 (N.D.N.Y. 2009) (the Court rejects the decisions in *Hall*, *Guzman*, *Waybright*, *Myers* and *Powers* as the minority view); *Romeo*, 2009 WL 140422, at *4-5 (the Court adopted the "majority view" and held that § 16913 and § 2250(a) must be read

14

together); *Fuller*, 2008 WL 5600709, at *5 (considering both statutes together, the Court held that SORNA's registration requirements and penalty provision were valid attempts to regulate "persons" in interstate commerce); *Van Buren*, 2008 WL 3414012, at *12 (holding that § 16913 and § 2250(a) were interrelated such that a facial challenge to one part of SORNA cannot be resolved without resort to the totality of the statute and the weight of authority compelled the court to reject defendant's challenge).

This Court adopts the majority view of the courts in this district and other districts and concludes that  §§ 16913 and 2250(a) are interrelated components of a statutory scheme and must be analyzed together.  As stated by Judge Sharpe in *Lamere*, "there is no criminal penalty unless there is failure to register and conversely, failure to register cannot be enforced without a criminal penalty . . . § 2250(a) lacks all meaning without reference to § 16913 and § 16913 lacks all effect without reference to § 2250(a)".  *See Lamere*, 2008 WL 5244125, at *4 (citing *U.S. v. Crum*, 2008 WL 4542408 (W.D. Wash. 2008).   As such, the Court rejects defendant's argument that § 16913 is unconstitutional under the Commerce Clause.

**E.     Necessary and Proper Clause**

In further support of § 16913, the government argues that § 16913 is a valid use of Congress' power under the Necessary and Proper Clause.[9]  It has long been recognized that Congress has the ability to make all laws which shall be necessary and proper for the accomplishment of its commerce clause power.  *See* U.S. Const., Art. I.  The law must be deemed

---

[9] Defendant did not address the Necessary and Proper Clause.

15

a rational and appropriate means to further Congress' regulation of interstate commerce.  *Ambert*, 561 F.3d at 1212 (citing *U.S. v. Darby*, 312 U.S. 100, 121 (1941)); *see also McCullough v. Maryland*, 17 U.S. 316 (1819) (Chief Justice Marshall concluding that, "[l]et the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional").  Congress may regulate intrastate activity so long as the means employed by Congress are "reasonably adapted" to the attainment of a legitimate end under the commerce power.  *Ambert*, 561 F.3d at 1212 (citing *Darby*, 312 U.S. at 121).

The Court of Appeals for the Fifth, Eighth, Ninth and Eleventh Circuits addressed the Necessary and Proper Clause in the context of SORNA.  In *U.S. v. Howell*, 2009 WL 66068, at *3 (8th Cir. 2009), the Eighth Circuit analyzed § 16913 and noted that, "[s]everal district courts have decided Commerce Clause challenges" and the "vast majority of them have found § 16913 constitutional".  *Howell*, 2009 WL 66068, at *3, n. 3.  The Eighth Circuit noted that five district courts had invalidated § 16913 but found the decisions in *Hall, Myers* and *Powers* unpersuasive as those courts failed to analyze § 16913 under the Necessary and Proper Clause.  *Id*.  Similarly, the Eighth Circuit dismissed the holding of *Guzman* reasoning that it was, "contrary to our holding that SORNA's intent was to further interstate tracking of sex offenders".  *Id.*

The *Howell* court analyzed the Necessary and Proper Clause and specifically, whether or not SORNA was furthering a legitimate end under the Commerce Clause.  *Id.* at *5.  The court noted that under § 2250(a), Congress limited the enforcement of the registration requirement to only those sex offenders who were either convicted of a federal sex offense or who moved in interstate commerce.  *Howell* 2009 WL 66068 at *5.  Therefore, a wholly intrastate offender

would never be reached by federal enforcement power.  *Id.*  The *Howell* court rejected the

reasoning of *Waybright* and held that the language, statutory scheme and legislative history

demonstrated that Congress intended to focus on the interstate movement of sex offenders.  *Id.* at

\*6.  The court concluded:

> [a] narrow discussion which only analyzes § 16913 under the three categories of
> *Lopez* casts doubt on the constitutionality of § 16913 (internal citation omitted).  On
> its face, § 16913 does not have a jurisdictional "hook" to fit under the first two
> prongs of *Lopez*, and there is little evidence in this record to show intrastate sex
> offender registration substantially affects interstate commerce (internal citation
> omitted).  However, an analysis of § 16913 under the broad authority granted to
> Congress through both the Commerce Clause and the enabling Necessary and Proper
> Clause reveals the statute is constitutionally authorized.

*Id.* at \*4.

Consequently, the Eighth Circuit held that § 16913 was constitutional under Congress'

authority to use necessary and proper means to further its Commerce Clause power because it "is

a necessary part of a more general regulation of interstate commerce".  *Id.* at \*6.

In *Ambert*, the Eleventh Circuit agreed with the holding in *Howell*.  *Ambert*, 561 F.3d at

1212.  The court stated that, "SORNA was designed to create an interstate system to counteract

the danger posed by sex offenders who slip through the cracks or exploit a weak state registration

system by traveling or moving to another state without registering".  *Id.*  The language of §

16913 focused on the movement of sex offenders across state borders and only contains a federal

enforcement provision against individuals who travel in interstate or foreign commerce and fail to

register.  *Id.*  Therefore, the court held that, "the requirement that sex offenders register under §

16913 is necessary to track those offenders who move from jurisdiction to jurisdiction".  *Id.*

The majority of courts in this district have adopted similar reasoning.  *See Romeo*, 2009

WL 140422, at \*4-5 (the court adopted the majority view and the holding of *Howell* concluding

that § 16913 found support in the Necessary and Proper Clause and noted, "[t]he registration and updating requirements of § 16913 are necessary to make § 2250(a) - a regulation of interstate commerce - effective"); *see also Van Buren*, 2008 WL 3414012, at *14 (holding that the means chosen - registration and updating - are reasonably adapted to the attainment of a legitimate end under the commerce power).

This Court adopts the majority view and finds that the Necessary and Proper Clause provides support for § 16913 as a reasonable means to accomplish legitimate ends. Specifically, Congressional efforts to monitor sex offenders in interstate travel.

**F.      Tenth Amendment**

Defendant alleges that SORNA's registration requirements are an unconstitutional encroachment of federal power on state sovereignty in violation of the Tenth Amendment. The Tenth Amendment states that, "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people". *Fuller*, 2008 WL 5600709, at * (citing U.S. Const. amend. X). Defendant's argument has been rejected by courts in this district. *Romeo*, 2009 WL 140422, at *5 (holding that the defendant was not able to show that SORNA compelled New York or California to make any changes to their state sex offender registries); *Hall*, 577 F.Supp.2d at 617 (holding that the defendant could not show that New York or Virginia had made changes to their state sex offender registries in response to SORNA); *Lamere*, 2008 WL 5244125, at *4 (holding that the defendant was not able to show that SORNA compelled New York and Washington to make any changes in their registries).

18

In this case, defendant was required to register and update his registration under New York law.  Defendant has not established that SORNA compelled New York or Ohio to make changes to their registries.  Therefore, defendant's Tenth Amendment challenge must fail.

## G.        Non-Delegation Doctrine

Defendant argues that SORNA violates the non-delegation doctrine as Congress cannot delegate its legislative authority to the Attorney General.  Congress has the sole authority to legislate and is not permitted to abdicate or to transfer to others the essential legislative functions with which it is vested.  U.S. Const., Art. I, §§ 1,8; *see also Schecter Poultry Corp. v. U.S.*, 295 U.S. 495, 529 (1935).   "The non-delegation doctrine does not keep Congress from obtaining the assistance of its coordinate branches; it merely requires Congress to provide clear guidance and delineate the boundaries of delegated authority".  *Van Buren*, 2008 WL 3414012, at *15.  "When § 16913 is read as a whole, it is clear that the statute only authorizes the Attorney General to promulgate regulations in a limited number of circumstances".  *Id.* at *15.  The Attorney General's authority under § 16913(d) extends only to "those currently unregistered offenders literally unable to comply with (b) because of the age of their convictions. . ."  *Fuller*, 2008 WL 5600709, at *6 (internal citations omitted).

Defendant's argument has consistently been rejected by courts in this district.  *See Romeo*, 2009 WL 140422, at *5; *Lamere*, 2008 WL 5244125, at *4; *Van Buren*, 2008 WL 3414012, at *15; *Fuller*, 2008 WL 2437869, at *6 (holding that since the delegated authority is very limited in scope, SORNA does not violate the non-delegation doctrine); *Hall*, 577 F.Supp.2d at 618.  Moreover, the Court of Appeals for Eleventh Circuit held:

> We are satisfied that Congress has provided the Attorney General with 'intelligible principles' in the Sex Offender Registration and Notification Act.  Congress has

undeniably provided the Attorney General with a policy framework in § 16901 to guide his exercise of discretion under § 16913(d); and it has made a series of legislative judgments in §§ 16911, 16913, 16914 and 2250 that constrict the Attorney General's discretion to a narrow and defined category.

*Ambert*, 2009 WL 564677, at *12.

Accordingly, the Court adopts the majority view and finds that SORNA does not violate the non-delegation doctrine.

## V.     GOVERNMENT'S CROSS-MOTION FOR DISCOVERY

The government moves pursuant to Rule 16(b)(1) for an order directing defendant to:

> (A)   Permit the government to inspect and copy or photograph books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody, or control of defendant, which defendant intends to introduce as evidence in chief at the trial; and

> (B)   Permit the government to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of defendant, which defendant intends to introduce as evidence in chief at the trial or which were prepared by a witness whom defendant intends to call at the trial when the results or reports relate to that witness' testimony; and

> (C)   Order defendant to disclose to the government a written summary of testimony that defendant intends to use under Rules 702, 703 and 705 of the Federal Rules of Evidence as evidence at trial, and require that the summary describe the opinions of the witnesses, the bases and reasons thereof, and the witnesses' qualifications.

The government is entitled to said discovery pursuant to Fed. R. Crim. P. 16(b)(1) and defendant has not opposed the government's motion. Consequently, the Court grants the government's motion.

## VI.     CONCLUSION

20

For the foregoing reasons it is hereby

**ORDERED** that defendant's motion (Dkt. No. 8) to dismiss the indictment is **DENIED** in its entirety, and it is further:

**ORDERED** that the government's cross-motion (Dkt. No. 12) for discovery is **GRANTED.**

    **IT IS SO ORDERED.**

Date:  October 22, 2009

_____
Norman A. Mordue
Chief United States District Court Judge